UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

| | |
|---|---|
| OMAR FLORES, <br><br> Petitioner, <br><br> V. <br><br> GREGORY KIZZIAH, Warden, <br><br> Respondent. | Civil Action No. 7: 17-126-KKC <br><br><br> **MEMORANDUM OPINION <br> AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Omar Flores is an inmate formerly confined at the United States Penitentiary – Big Sandy in Inez, Kentucky.[1] In July 2017, Flores filed a *pro se* petition for a writ of habeas corpus challenging the Bureau of Prisons ("BOP")'s calculation of prior custody credits under 18 U.S.C. § 3585(b). [R. 1] Warden Gregory Kizziah has filed his response to the petition. [R. 9] The time for Flores to file a reply has passed, and this matter is therefore ripe for decision.

The Court has previously set forth at length the factual and legal basis for Flores's claim [R. 4], and the Court assumes familiarity with that discussion. In sum, in 2006 Flores agreed to plead guilty to one count of conspiracy to commit racketeering. As part of that agreement, Flores agreed to serve a 220-month sentence with the understanding that he would be given credit for approximately 64 months he had spent in state custody since the date of his arrest in September 2001. The parties expressly so stated during the sentencing hearing, and the trial judge verbally expressed his understanding and acceptance of those terms. [R. 10-1 at 4, 26, 28-29]

---

[1] Flores is currently residing at a halfway house in Georgia, and is scheduled to be fully released from federal custody on August 13, 2018.

1

The most appropriate way to effectuate that understanding would have been to reduce the 220-month term by 64 months through a downward departure pursuant to U.S.S.G. § 5G1.3(b)(1), (2) (2006), and to have imposed a resulting 156-month sentence in the written judgment. Cf. *United States v. Dorsey*, 166 F. 3d 558, 560 (3d Cir. 1999) (noting that the application notes to the Guidelines advise a district court that "if it decides that a 13–month federal sentence is appropriate, it should shorten that sentence to seven months and, in this way, give credit on the federal sentence for the six months already served on the state sentence."). Instead, the written judgment for Flores imposed a 220-month sentence but stated that it was "to be served concurrently with the sentence imposed on July 26, 2002 in DeKalb County, Georgia Superior Court Case #01-CR-1823. The calculation of defendant's sentence shall begin as of September 1, 2001." *United States v. Flores*, No. 1: 02-CR-730-4-BBM (N.D. Ga. 2002).

Flores was returned to Georgia to serve the balance of his pre-existing state sentence, which he completed in August 2011. When he was transferred into BOP custody to serve the remainder of his federal sentence, the BOP exercised the authority vested exclusively with it under 18 U.S.C. § 3585(a) to determine that Flores's federal sentence commenced in December 2006 on the day it was imposed, notwithstanding the language in the judgment stating a commencement date in September 2001. This conclusion was correct under long-established precedent. Cf. *United States v. Wells*, 473 F.3d 640, 645 (6th Cir. 2007) ("... it falls to BOP, not the district judge, to determine when a sentence is deemed to 'commence.'").

Acting at the request of the parties, in 2011 the trial court then issued an amended judgment stating that "[t]he defendant shall be given credit toward this sentence from September 1, 2001, for the time he spent in the custody of the State of Georgia for the same conduct as gave rise to the defendant's federal conviction in this case." But determining prior custody credits is

2

also an authority vested exclusively with the BOP, *United States v. Wilson*, 503 U.S. 329, 335 (1992), and the BOP again acted properly in declining to follow the 2011 amended judgment because that time had already been credited against Flores's state sentence, and hence could not be "double counted" under 18 U.S.C. § 3585(b). *Broadwater v. Sanders*, 59 F. App'x 112 (6th Cir. 2003).

Flores filed a second motion for relief in the trial court, but that request was denied in 2014 because a challenge to the BOP's sentence computations must be pursued in a habeas corpus petition. Flores then filed an inmate grievance with the BOP to obtain the prior custody credits he sought. The BOP initially denied relief, correctly noting that it was foreclosed by the plain language of § 3585(b). [R. 1-2] But in January 2015, the BOP reversed course and concluded that Flores was entitled to 64 months of "credit" towards his sentence pursuant to U.S.S.G. § 5G1.3(b), effectively reducing his sentence to 156 months. [R. 1-3] The BOP's decision did not set forth the factual basis for its conclusion.

To explain its decision to invoke § 5G1.3(b), the BOP now relies upon the Third Circuit's decision in *Ruggiano v. Reish*, 307 F. 3d 121 (3d Cir. 2002). [R. 9 at 7-9] In that case, the federal trial judge stated during the sentencing hearing that Ruggiano should receive credit for time spent in jail on an unrelated state offense. The written judgment, however, merely stated that he should receive "credit for time served." *Id.* at 124-25. When the BOP concluded that such an award of prior custody credits was barred by § 3585(b), Ruggiano filed a § 2241 petition to obtain relief. On appeal, the Third Circuit held that the transcript of the sentencing hearing made plain that the trial judge's reference to "credit" during the hearing was intended to effect a downward departure under § 5G1.3. Because the sentence verbally pronounced at the hearing

3

controlled over any conflicting language in the written judgment, Ruggiano was entitled to habeas relief to effectuate the intended downward departure. *Ruggiano*, 307 F.3d at 132-34.

As this Court noted in its Order directing the government to respond to the petition, just as a sentencing judge lacks the authority to determine when a sentence commences under § 3585(a) or how many days of prior custody credits a defendant may be entitled to under § 3585(b), so too the BOP lacks the authority to invoke U.S.S.G. § 5G1.3(b) to "adjust" or "reduce" a sentence in a manner that clearly conflicts with the sentence imposed on the face of the written judgment. [R. 4 at 3-4] The Sentencing Guidelines afford the trial judge, and only the trial judge, authority to grant a downward departure at the time of sentencing to account for time the defendant spent in custody on other charges. Indeed *Ruggiano*, the sole decision relied upon by the BOP to justify its action, makes this plain:

> ... the BOP, in arguing that the sentencing judge intended through his "nonbinding recommendation" to grant to the BOP the power and discretion to adjust Ruggiano's sentence for time served on his state conviction, would have us believe that the sentencing judge gave the BOP power **which it is statutorily prohibited from exercising**, for as we noted above, see supra at 132, **adjusting a sentence for time served on a state conviction pursuant to § 5G1.3 is within the exclusive authority of the sentencing court.**

*Ruggiano*, 307 F. 3d at 135 (emphasis added).[2] A downward departure is properly evidenced in the judgment not by language stating a commencement date before the sentence was imposed or by giving the defendant credit for time served, but only by imposing a shorter sentence. The Court understands the frustration likely felt by the BOP, Flores, and counsel by the situation they faced. But the remedy to address a written judgment that does not correctly express the agreed-upon intention of the parties lies not in creative "interpretation" of a written judgment by the

---

[2] It is also difficult to reconcile the BOP's assertion that it relied upon *Ruggiano* when it reached its decision in January 2012 [R. 9 at 9] with the fact that a transcript of the sentencing hearing – the primary evidentiary basis upon which to discern the trial judge's intent at the hearing and the cornerstone of the Third Circuit's analysis – was not prepared until April 2018 [R. 9 at 6 n.2].

4

BOP to conclude that the judgment means something that it plainly does not say. The only appropriate remedy is a judicial one: a habeas corpus petition filed pursuant to § 2241.

That said, having reviewed the sentencing transcript the Court agrees that the trial judge's intent at the sentencing hearing was to effect a reduced sentence pursuant to § 5G1.3(b).[3] The reduction was intended to reflect the understanding between Flores and the prosecution as part of the plea agreement and to account for the five years that Flores had already spent in state custody. [R. 10-1 at 4, 26, 28-29] While the judge may have casually referred to "credits" instead of formally referring to a "downward departure" or referencing § 5G1.3(b), it is the sentencing judge's intention that is controlling: no magic words are required. Cf. *United States v. Margiotti*, 85 F.3d 100, 105 (2d Cir. 1996) ("Section 5G1.3(c) simply does not require the use of any particular verbal formula or incantation."). And it is the oral sentence that controls in the face of any conflict with the written judgment. *United States v. Penson*, 526 F. 3d 331, 334 (6th Cir. 2008).

Accordingly, while the Court concludes that the BOP exceeded its authority when it reduced Flores's sentence in 2012, this Court sitting in habeas has the authority to effectuate the sentencing court's intent to effect a downward departure under § 5G1.3(b) as expressed during the sentencing hearing, and finds the relief authorized under *Ruggiano* warranted here. As the Court noted in its prior Order, it is unclear why Flores sought habeas relief by filing the petition in this case in 2017 after the BOP had already effectively advanced his release date to account for the time he had spent in prior custody. [R. 4 at 4] The BOP having already advanced

---

[3] Based upon language in the 2011 amended judgment and through the respondent's reference to *Ruggiano*, the Court assumes that Flores's Georgia state offense constituted "relevant conduct" for his federal racketeering offense as required to implicate § 5G1.3(b), not merely § 5G1.3(c). See *Belcher v. Cauley*, No. 08-132-HRW, 2009 WL 464932, at *2-3 (E.D. Ky. Feb. 24, 2009).

5

Flores's release date from April 26, 2022 to August 13, 2018 [R. 9-1 at 5], the petition has been rendered moot, and the Court will so order.

Accordingly, it is **ORDERED** as follows:

1. Petitioner Omar Flores's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [R. 1] is **DENIED AS MOOT**.

2. This action is **DISMISSED** and **STRICKEN** from the Court's docket.

3. Judgment shall be entered contemporaneously with this Memorandum Opinion and Order.

Dated August 6, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY